FILED

2023 Apr-25  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBERT TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  5:22-cv-01350-HNJ |
| | ) | |
| CHRISTINE E. WORMUTH, | ) | |
| Secretary, Department of the Army, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff, Robert Taylor, an employee of the Army Contracting Command at Redstone Arsenal in Huntsville, Alabama, asserts claims against Christine E. Wormuth, the Secretary of the Department of the Army, for wage discrimination, retaliation, race-based disparate treatment, and race discrimination.   (Doc. 1). Defendant moved to dismiss those claims.  (Doc. 13).

For the reasons discussed herein, the court will partially grant the motion to dismiss.  Taylor's Equal Pay Act claim cannot proceed because he alleges only race-based pay disparities, not sex-based disparities.  Taylor's other claims will survive the motion to dismiss and proceed to discovery.  Based upon the current record, Taylor did not fail to exhaust his available administrative remedies; the factual assertions underlying his Title VII claims do not exceed the scope of his administrative complaint; and he states plausible claims for disparate treatment and retaliation.

## ALLEGATIONS OF TAYLOR'S COMPLAINT

Robert Taylor, a 59-year-old black male with a disability, began working for Defendant as a Supervisory Management Support Analyst on approximately August 3, 2013. (Doc. 1-2, ¶¶ 7, 9). He supervised "a variety of administrative personnel with little to no resources to support his daily responsibilities." (*Id.* ¶ 7). Taylor repeatedly requested additional resources, but Defendant denied his requests, impairing his ability to succeed in the job. Taylor "received additional resources three to four years after his initial formal request, in which the workload was out of control in terms [of] the amount of people moving around the organization." (*Id.* ¶ 10). Specifically, Defendant moved nine employes from under Taylor's supervision, resulting in a labor deficit in Taylor's department. (*Id.* ¶ 11). Those employees returned after six months, but by then, Taylor's department experienced inundation, overwhelming conditions, and turmoil. (*Id.* ¶ 12). Taylor also requested, but was denied, additional automation equipment. (*Id.* ¶ 15).

In contrast, Defendant provided white supervisors with necessary resources. (Doc. 1-2, ¶ 7). Despite the labor and equipment deficiencies, Taylor worked hard to produce the best outcome for the agency, and he exceeded expectations for his performance. (*Id.* ¶¶ 12, 25). On unspecified dates, Taylor expressed his concerns about racial disparities in providing resources to management officials, including Rebecca Weirick, Army Contracting Command – Redstone Executive Director; John

Mayes, Deputy Executive Director; Kenny Johnson, Military Deputy; and William Trimble, Military Deputy.  Those officials did not take any corrective action.  (*Id.* ¶¶ 10, 16).

At some unspecified point in the past, Taylor served as Acting Business Management Director in the absence of the permanent Business Management Director. However, when the Business Management Director retired, Defendant permitted unqualified white employees nearing retirement to occupy the position without offering it to qualified minorities.  (*Id.* ¶ 8).[1]

On September 3, 2019, Defendant moved Taylor from his hard-wall office to an open cubicle during the course of an allegedly frivolous investigation.  (*Id.* ¶ 9).  The move resulted in the removal of Taylor's supervisory duties.  His salary did not change, but he performed only "intangible work," and his "future earning potential was reduced to the lowest of any supervisor within the organization."  (*Id.* ¶ 19).  Defendant did not return Taylor to his former position.  (Doc. 1-2, ¶ 29).  In addition, because of Taylor's race, Defendant blamed him for other employees' wrongdoings, mistakes, and faults. (*Id.* ¶ 26).

Taylor experienced humiliation, embarrassment, and degradation from the

---

[1] Taylor's Complaint states Defendant allowed unqualified "causations" to occupy the Business Management Director position.  (Doc. 1-2, ¶ 8).  However, due to the nature of Taylor's claims asserting race discrimination, the court presumes "causations" represents a typographical error, and Taylor intended to type "Caucasians."

removal of his supervisory duties and his transfer to a cubicle office. (*Id.* ¶ 17). He suffers severe anxiety that affects major life activities including caring for himself, performing manual tasks, hearing, eating, sleeping, walking, standing, speaking, breathing, learning, reading, concentrating, thinking, and communicating. (*Id.* ¶ 21). The investigation and removal of supervisory duties exacerbated his symptoms, resulting in loss of sleep, fear, anxiety, depression, fright, and humiliation. (*Id.* ¶¶ 22-23).

In contrast to Taylor's situation, Defendant did not move 14 white supervisors during "an investigation with known facts," including a white female employee whom Defendant caught stealing time. (*Id.* ¶¶ 9, 30). Taylor alleges Defendant has a history of moving only black and Hispanic supervisors during investigations. (Doc. 1-2, ¶¶ 13-14, 18). Defendant praises white employees even when they do not perform well, as the agency believes "only white employees can accomplish the required mission." (*Id.* ¶ 31). Despite "having an email from the labor relations office describing [Taylor] not returning to his position of record, the Defendant refused to focus on the facts and discriminated against [Taylor] based on his race." (*Id.* ¶ 10).[2]

Taylor claims that his age, gender, color and race motivated Defendant's decision

---

[2] Taylor's Complaint actually states "Defendant . . . discriminated against the Defendant . . . ." (*Id.* ¶ 10). Again, the court presumes that sentence includes a typographical error, and Taylor intended to type "discriminated against the Plaintiff."

to subject him to harassment and disparate treatment. (*Id.* ¶ 26). He asserts Defendant's actions constituted a pattern, practice, and policy of discrimination. (*Id.* ¶ 28). Moreover, after Taylor lodged an EEO complaint to address Defendant's discrimination, Defendant retaliated against him by paying him less than any other supervisor in the organization. (*Id.* ¶ 32).

Taylor's complaint asserts four causes of action. For the first cause of action, he claims Defendant violated the Equal Pay Act by paying him less than other supervisors within his organization. (Doc. 1-2, ¶¶ 35-45).

For the second cause of action, Taylor claims Defendant's decision to pay him less than other supervisors, decrease his benefits, and diminish his responsibilities after he submitted an EEO complaint and complained of the pay disparity constituted race discrimination and retaliation in violation of Title VII. (*Id.* ¶¶ 46-54).

For the third cause of action, Taylor claims Defendant subjected him to race-based disparate treatment when it required him to work in a cubicle for almost a year, causing humiliation and increasing his stress; publicized a new white employee; allowed a white employee to create new government positions though Taylor did not receive permission to do so; and failed to take him seriously when he complained of not having enough time to adequately fulfill his duties. (*Id.* ¶¶ 55-63).

For the fourth cause of action, Taylor claims race discrimination motivated Defendant to set him up for failure by providing him inadequate resources, while

Defendant provided adequate resources to a white supervisor. Then Defendant assigned him a low job performance rating, decreased his job responsibilities, denied him a promotion, reassigned him to a position with limited job duties and no advancement potential, and moved him from a hard-wall office to a cubicle, all while treating white employees more favorably. (*Id.* ¶¶ 64-73).

For relief, Taylor requests a judgment declaring that Defendant violated Title VII and the Equal Pay Act, a permanent injunction preventing Defendant from continuing to violate his rights and the rights of others, backpay, restored leave, nominal damages, benefits, compensatory damages, punitive damages, liquidated damages, post-judgment interest, costs, attorneys' fees, and expenses. (*Id.* at 19-20, ¶¶ VI(1)-(4)).

## BACKGROUND OF TAYLOR'S ADMINISTRATIVE CLAIMS

Taylor initiated contact with an EEO official on September 23, 2019. (Doc. 13-1, at 1). The EEO agency conducted an in-person intake interview on September 25, 2019. (*Id.*). Taylor complained that he suffered race, color, and age discrimination when he received notice on September 3, 2019, that Defendant moved him from his position as a Supervisory Management Analyst to a non-supervisory position as an Operations Officer. (*Id.* at 2). Taylor

> stated th[at] he was removed from his position as a Supervisory Management Analyst position [*sic*] (NH-343-04) based on the Financial Liability Investigations of Property Loss (FLIPL). He claimed disparate treatment because other employees of a particular race (White) have been under a 15-6 investigation and were not moved from their position. He

6

stated this movement and displacement has added and created an intentional infliction of emotional distress to his life. He believes this act and conduct was intentionally, recklessly, [*sic*] and the conduct was extreme and outrageous. This has caused him severe emotional distress which has caused him to utilize more sick days within a 45 day time-frame than he would have used within a year. He holds the opinion that this removal was a calculated plan to cause him emotional harm, embarrassment, humiliation and indignity. He claims this incident has created a hostile work environment for him through actions, communication and behavior that has made it impossible for him to perform his job. He feels that the behavior has altered the terms, conditions, and reasonable expectations of a comfortable work environment for not only him but for previous employees. He does not enjoy coming to work because it is painful based on bullying tactics. He was detailed to the position of a Strategic Planning Officer PD# BK478743 not to exceed 120 days and can be extended or terminated at the discretion of management. He was told their [*sic*] was a decision to . . . recruit for his position as a Supervisory Management Analyst position [*sic*] (NH-343-04).

(*Id.*).

Taylor elected Abner Merriweather, a non-attorney, to represent him during the EEO counseling process. (*Id.* at 3). An EEO counselor conducted an investigation but could not facilitate a resolution of Taylor's claims. Therefore, on October 18, 2019, the EEO counselor conducted a final interview and completed a DA Form 7510 (EEO Counselor's Report), checking a box that recited:

Resolution was not accomplished, therefore, I conducted the final interview with aggrieved on 20191018 (YYYMMDD) at which time I informed the aggrieved of the full scope of my inquiry and the reason(s) articulated by management for action(s) taken. I provided the aggrieved with a Notice of Right to File a Formal Complaint of Discrimination and a DA Form 2590, Formal Complaint of Discrimination. The aggrieved is

aware of the requirement to file a formal complaint within **15 calendar days** of the final interview if not satisfied with the results of my inquiry.

(*Id.* at 5) (emphasis in original).  The EEO counselor transferred the file to an EEO Officer on October 28, 2019.  (Doc. 13-1, at 5).[3]

On October 30, 2019, Defendant sent copies of the Notice of Right to File a Formal Complaint of Discrimination and DA Form 2590 (Formal Complaint of Discrimination) to Taylor and his non-attorney representative via certified mail. Taylor's representative received those forms on November 4, 2019, and Taylor received them on November 6, 2019.  (Doc. 13-2, at 1-2).

On November 20, 2019, Taylor filed a formal complaint of discrimination.  On that same date, Jennifer S. Thompson, the Equal Employment Opportunity Director, sent Taylor a letter acknowledging receipt of the complaint.  (Doc. 13-3, at 1).  However, the record does not contain a copy of Taylor's formal EEO complaint.

On July 28, 2022, the EEO office issued a final action on Taylor's November 20, 2019, complaint.  (Doc. 1-1).  The final action document stated it addressed Taylor's claims of race, color, sex, age, and disability discrimination, as follows:

a.    On September 3, 2019, you were removed from your position of record as a Supervisory Management Analyst to a non-supervisory Operations Officer position, GS-0301-14, while under

---

[3] Army regulations require the EEO counselor to "submit a written report of all actions taken during the inquiry and of the information provided to management and the aggrieved to the EEO officer within 5 days of completion of counseling." Army Reg. 690-600 ¶ 3-9(h).  The record does not explain why the EEO counselor did not send notice to an EEO officer within five days of the October 18, 2019, final interview.

investigation while four White employees being investigated were not required to move from their positions of record and you were not given adequate time to clean out your office to move to a cubicle; and

b.    On an unknown date, you were replaced by a younger Black employee with no visible disabilities.

(*Id.* at 1-2).

The final action document recounted that an EEOC Administrative Judge had granted the agency's motion for summary judgment and issued a decision finding no discrimination.  The EEO office decided to implement the Administrative Judge's decision.  (*Id.* at 2).  The document also informed Taylor of his right to file a Notice of Appeal with the Equal Employment Opportunity Commission (EEOC) within 90 days of receipt of the final action, and to file a federal lawsuit within 90 days of receiving the EEOC's final decision on appeal.  Alternatively, in lieu of an appeal to the EEOC, Taylor could file a federal lawsuit within 90 days of receiving the final action.  (*Id.* at 2-4).

Taylor filed this case on October 21, 2022.  (Doc. 1).

## DISCUSSION

Defendant asks the court to dismiss all claims arising under Title VII for failure to exhaust administrative remedies, and for failure to state a claim upon which relief can be granted.  Defendant also asks the court to dismiss Taylor's Equal Pay Act claim for failure to state a plausible claim for relief.

9

## I.     Based Upon the Current Record, the Court Will Not Dismiss Taylor's Title VII Claims for Failure to Exhaust Administrative Remedies

Under Title VII, an aggrieved federal employee must press a discrimination claim pursuant to the administrative complaint and appeals process provided in the Equal Employment Opportunity Commission ("EEOC") regulations. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.103(a).

The employee must first attempt to resolve his or her claim through informal counseling. 29 C.F.R. § 1614.105(a). He or she "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id.* § 1614.105(a)(1).[4] Subject to certain exceptions not applicable here, the Counselor must conduct a final interview with the aggrieved employee

> within 30 days of the date the aggrieved person contacted the agency's EEO office to request counseling. If the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of right to file a discrimination complaint. The notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of

---

[4] The agency may extend the 45-day time limit if

> the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known [*sic*] that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2).

the notice, of the appropriate official with whom to file a complaint and of the complainant's duty to assure that the agency is informed immediately if the complainant retains counsel or a representative.

*Id.* § 1614.105(d). The employee must file a formal complaint within 15 days of the Counselor's notice. *Id.* § 1614.106(b).

Defendant's assertion that Taylor failed to satisfy these administrative requirements challenges this court's jurisdiction.

"Federal courts are courts of limited jurisdiction" and, as such, they possess the power to hear cases only as authorized by the Constitution or United States' laws. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). In addition, federal courts possess "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

A federal employee must exhaust his or her administrative remedies as a "jurisdictional prerequisite" to filing a lawsuit under Title VII. *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999); *accord Thomas v. Nicholson*, 263 F. App'x 814, 815 n.1 (11th Cir. 2008) (per curiam) (citing *Crawford*, 186 F.3d at 1326) ("It is well-settled that,

as a jurisdictional prerequisite, a federal employee must timely exhaust administrative remedies prior to filing an employment discrimination suit under Title VII."); *Brown v. Snow*, 440 F.3d 1259, 1263 (11ᵗʰ Cir. 2006), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (quoting *Crawford*, 186 F.3d at 1326) ("[O]ur case law establishes that '[a] federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action . . . .'") (second alteration in original).[5]

Accordingly, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction constitutes the proper vehicle for challenging a plaintiff's failure to exhaust administrative remedies in the federal employment sector.  *See Brown*, 440 F.3d at 1263 ("We have applied the exhaustion requirement to affirm dismissals for lack of subject matter jurisdiction when the employee did not provide information requested by the investigating agency."); *Swauger v. Dep't of Def. - Def. Intel. Agency*, 852 F. App'x 393, 396 (11ᵗʰ Cir. 2021) (citations omitted) ("When a complaint under Title VII is time-barred for failure to exhaust administrative remedies, it must be dismissed for lack of subject-matter jurisdiction."); *Hawkins v. Esper*, No. 5:18-cv-00127-AKK, 2019 WL 5963520, at

---

[5] Moreover, a plaintiff's failure to comply with administrative filing deadlines constitutes a failure to exhaust administrative remedies, notwithstanding a plaintiff's timely filing of a complaint in federal court.  *See Hall v. Potter*, No. 06-CV-5003 (JFB)(AKT), 2009 U.S. Dist. LEXIS 18955, at *18-19 (E.D.N.Y Mar. 4, 2009) ("Where a plaintiff fails to appeal a decision to the EEOC within the thirty-day statutory limit but does ultimately file a civil action within ninety days of the EEOC's final determination of that untimely appeal, the timely filing of the federal court action does not cure that plaintiff's original failure to abide by the requisite filing periods.").

*5 (N.D. Ala. Nov. 13, 2019) (the plaintiff failed to exhaust his administrative remedies pursuant to Title VII, thus precluding the court's subject matter jurisdiction over his claims); *Dillard v. Runyon*, 928 F. Supp. 1316, 1325 (S.D. N.Y. 1996) ("If a [Title VII] claimant has not met the filing requirements, . . . there is no waiver of sovereign immunity, and accordingly, no subject matter jurisdiction. . . .  Accordingly, defendant's motion here properly is characterized as one pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss for lack of subject-matter jurisdiction."); 5B Charles Alan Wright, Arthur R. Miller & May Kay Kane, Federal Practice and Procedure § 1350 (3d ed. 1995) ("[T]he Rule 12(b)(1) motion to dismiss for a lack of subject matter jurisdiction . . . may be appropriate when the plaintiff has failed to exhaust administrative procedures that have been established, typically by statute, as a prerequisite to his bringing suit.").

Rule 12(b)(1) permits a district court to dismiss a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  The plaintiff bears the burden of persuasion on establishing the court's subject matter jurisdiction.  *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

The Eleventh Circuit establishes particular modes of review for Rule 12(b)(1) challenges:

> [A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. If the challenge is facial, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised . . . Accordingly, the court must

consider the allegations in the plaintiff's complaint as true . . .

A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion . . . Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered. Furthermore, . . . the district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing, *inter alia*, *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981);[6] *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (internal quotation marks and alterations omitted).

Therefore, a factual challenge to subject matter jurisdiction typically permits a "trial court . . . to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413 (quoting *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3rd Cir. 1977)). No presumptive truthfulness would attach to a plaintiff's claims, and "the existence of disputed material facts [would] not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Id.* (quoting *Mortensen,* 549 F.2d at 891); *see also Lawrence,* 919 F.2d at 1529.

Defendant argues Taylor needed to file a formal EEO complaint by November 19, 2019, or within 15 days of November 4, 2019, the date on which his non-attorney representative received a certified mail copy of the Notice of Right to File a Formal Complaint of Discrimination and DA Form 2590 (Formal Complaint of Discrimination).  As Taylor filed the complaint on November 20, 2019, one day after the 15-day period expired, Defendant asserts Taylor did not properly exhaust administrative remedies.[7]

Defendant relies upon an EEOC regulation providing as follows:

> Unless the complainant states otherwise in writing, after the agency has received written notice of the name, address and telephone number of a representative for the complainant, all official correspondence shall be with the representative with copies to the complainant.  When the complainant designates an attorney as representative, service of all official correspondence shall be made on the attorney and the complainant, but time frames for receipt of materials shall be computed from the time of

---

[7] In assessing Taylor's satisfaction of administrative remedies, the court reviewed documents Defendant attached to its motion to dismiss, including the EEO Counselor's Report (Doc. 13-1), Certified Mail Return of Service Cards (Doc. 13-2), and the November 20, 2019, letter acknowledging receipt of Taylor's formal EEO complaint.  (Doc. 13-3).  If Taylor's exhaustion of administrative remedies did not present a jurisdictional question, consideration of such extraneous documents would not comport with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  However, as discussed in the text, a court may consider matters outside the pleadings when addressing a jurisdictional issue pursuant to Rule 12(b)(1).  *Douglas v. United States,* 814 F.3d 1268, 1278 (11th Cir. 2016) (citations omitted) (second alteration in original) ("[A] 'factual attack' on subject matter jurisdiction 'challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'"); *see also McElmurray v. Consol. Gov't of Augusta-Richmond Cty.,* 501 F.3d 1244, 1251 (11th Cir. 2007) (same).

receipt by the attorney.   The complainant must serve all official correspondence on the designated representative of the agency.

29 C.F.R. § 1614.605(d).

However, that provision plainly states the agency will calculate time frames for receipt of materials by a complainant's representative receives notice only when an attorney represents the complainant.   Here, Abner Merriweather, a non-attorney, represented Taylor during the administrative proceedings.   In such instances, the EEOC calculates deadlines based upon the date on which the complainant, not the representative, receives notice.   *See Myung S.*, EEOC DOC 2021003406, 2023 WL 2237500, at *3 (Jan. 31, 2023) (citing 29 C.F.R. 1614.605(d)) ("[W]here a complainant has designated a non-attorney representative, all official correspondence must be made to the complainant and representative, and time frames for receipt of materials [are] computed from the time of receipt of the complainant."); *Rosendo F.*, EEOC DOC 2021002186, 2021 WL 2520190, at *1 (June 3, 2021) ("Although Complainant's non-attorney representative argues that he was out of town until December 27, 2020, timeliness in this case is based upon *Complainant's* receipt of the Notice.") (emphasis in original); *Nicholas G. Neu, Complainant*, EEOC DOC 0120111989, 2012 WL 4049085, at *1 (Sept. 7, 2012) (citing 29 C.F.R. § 1614.605(d)) ("[U]nder the regulations, the time frame for filing an appeal is computed from the time when Complainant received the Agency's final order and not when his non-attorney [representative] received the

same.").

As Taylor filed a formal EEO complaint within 15 days of November 6, 2019, the date he received certified mail notice of the Notice of Right to File a Formal Complaint of Discrimination and DA Form 2590 (Formal Complaint of Discrimination), Defendant does not demonstrate that Taylor failed to exhaust his administrative remedies.[8]

Defendant alternatively argues Taylor should have filed a formal EEO complaint within 15 days of the October 18, 2019, final interview, as "Taylor personally received notice of his right to file the formal complaint of discrimination" during that interview. (Doc. 13, at 9). Based upon the current record, the court cannot assess whether the October 18 final interview triggered the 15-day deadline for Taylor to submit a formal complaint.

Taylor's court filings do not address the final interview. As recounted previously, Defendant's filings demonstrate the EEO counselor checked a box on the DA Form 7510 reciting she provided Taylor with a Notice of Right to File a Formal Complaint of Discrimination and a DA Form 2590, Formal Complaint of Discrimination. (Doc.

---

[8] The court observes Defendant did not waive its right to challenge Taylor's exhaustion of administrative remedies by accepting Taylor's formal EEO complaint for processing. "It is well settled that a federal agency does not waive its right to object to untimely filings merely by accepting a complaint for investigation." *Blount v. Shalala,* 32 F. Supp. 2d 339, 341 (D. Md.), *aff'd,* 199 F.3d 1326 (4th Cir. 1999) (citing *Rowe v. Sullivan,* 967 F.2d 186, 191 (5th Cir. 1992); *Boyd v. United States Postal Serv.,* 752 F.2d 410, 414 (9th Cir. 1985); *Dailey v. Carlin,* 654 F. Supp. 146 (E.D. Mo. 1987)).

13-1, at 5).  The notation indicates Taylor knew of the requirement to file a formal complaint within 15 days of the final interview.

However, Army regulations prescribe some additional requirements.  First, the EEO counselor must "inform the aggrieved, *in writing*, that he or she has 15 days, from the date of receipt of the Notice of Right to File a Formal Complaint of Discrimination, to file a formal complaint."  Army Reg 690-600 ¶ 3-9(c) (emphasis added).  Here, though the EEO counselor indicated she informed Taylor of the 15-day filing period, there exists no evidence she did so in writing at that time, as the regulation requires.

In addition, when the EEO counselor provides the aggrieved party with a Notice of Right to File a Formal Complaint of Discrimination, the "aggrieved shall sign and date the notice to acknowledge receipt."  Army Reg. 690-600 ¶ 3-9(d).  If "the aggrieved refuses to acknowledge receipt of the notice, the server of the notice will note the refusal to acknowledge receipt on the notice and sign and date the notice."  Army Reg. 690-600 ¶ 3-9(d)(3).  Here, the record does not contain any evidence indicating whether Taylor signed the notice or refused to sign, or whether the EEO counselor informed him of the need to sign the written form.[9]

---

[9] The presence or absence of Taylor's signature bears significance for the Army's complaint processing procedures, as Army regulations provide an

> EEO Officer will not dismiss a complaint [as untimely] unless proof can be provided showing that complainant or complainant's attorney representative received the Notice of Right to File a Formal Complaint of Discrimination and was clearly informed of the 15-day filing period.  The notice of dismissal should reference the date

Without viewing a copy of a signed acknowledgement form or any documentation that Taylor refused to sign the form, the court cannot definitively determine whether Taylor received proper written notice of his right to file suit during the final interview, which would have triggered his obligation to file a formal complaint within 15 days.

As discussed above, a federal court can and should assess its subject matter jurisdiction at all stages of a case. *See Arbaugh*, 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). If, at a later stage, the evidence portrays Taylor received adequate written notice during the October 18, 2019, final interview of his right to file a formal EEO complaint within 15 days, the court will reassess Taylor's satisfaction of administrative remedies and its own subject matter jurisdiction over Taylor's Title VII claims.

**II.  Based Upon the Current Record, Taylor's Title VII Claims Addressing Non-promotion, Compensation, Benefits, Job Title, Diminished Responsibilities, Assignment to a Cubicle, Lack of Adequate Resources, and Unfavorable Performance Rating Do Not Exceed The Scope of His EEO Complaint**

---

the complainant either signed the Notice of Right to File or the date it was received by certified mail, and should include copies of those documents.

Army Reg. 690-600 ¶ 4-4(a)(4)(b).

Flowing from the jurisdictional imperative that a Title VII plaintiff must exhaust all available administrative remedies prior to filing suit, courts must limit judicial claims to "the scope of the investigation that could reasonably have been expected to flow from the [Plaintiff's] EEOC charge." *Swindle v. Jefferson Cnty. Comm'n*, 593 F. App'x 919, 925 (11th Cir. 2014) (citing *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004)).  Even so, courts should not strictly construe EEOC charges.  Thus, while courts should not allow a plaintiff to assert new acts of discrimination in a judicial complaint, they should permit a judicial claim that "'serve[s] to amplify, clarify, or more clearly focus earlier EEO[C] complaints.'"  *Id.* (quoting *Gregory*, 355 F.3d at 1279-80; *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989); *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980)) (alterations in original).

Defendant argues Taylor's Title VII claims addressing non-promotion, compensation, benefits, job title, diminished responsibilities, assignment to a cubicle, lack of adequate resources, and unfavorable performance rating cannot succeed because Taylor did not raise those claims in his formal EEO complaint.  Addressing that argument presents challenges, as the court file does not contain a copy of Taylor's formal EEO complaint.  Rather, the file contains only the July 28, 2022, notice of final agency action, which summarized Taylor's administrative claims as addressing race, color, sex, age, and disability discrimination occurring when Defendant: (1) removed him from his Supervisory Management Analyst position to a non-supervisory position

without allowing him sufficient time to clean out his office to move to a cubicle, while it did not treat similarly situated white employees in the same manner; and (2) replaced him with a younger black employee with no visible disabilities.

The second allegation summarized in the final agency action document does not bear on Defendant's argument, as Taylor has not asserted any claims in this action for age or disability discrimination, and replacement by a black employee does not bolster any of his race discrimination claims.

However, an EEO investigation of the first group of allegations the notice described – addressing Taylor's allegedly racially discriminatory removal from a supervisory position and reassignment to a cubicle – could reasonably uncover facts bearing on his judicial claims of discriminatory non-promotion, compensation, loss of benefits, a less distinguished title, diminished responsibilities, assignment to a cubicle, lack of adequate resources, and performance rating.  Indeed, the EEO Counselor's Report, which ostensibly recounts Taylor's allegations, evinces an investigative scope encompassing Taylor's claims:

> [The removal from his supervisory position] has created a hostile work environment for [Taylor] through actions, communication and behavior that has made it impossible for him to perform his job.  He feels that the behavior has altered the terms, conditions, and reasonable expectations of a comfortable work environment for not only him but for previous employees.  He does not enjoy coming to work because it is painful based on bullying tactics.

(Doc. 13-1 at 2).

21

Hence, without directly reviewing Taylor's formal EEO complaint, and relying solely on the description of that complaint contained in the notice of final agency action as well as the EEO Counselor's Report, the court concludes the allegations of Taylor's judicial complaint do not exceed the scope of his EEO complaint. The court will not presently dismiss Taylor's Title VII claims on these grounds, but as with the exhaustion of administrative remedies, the court will reassess this decision, if necessary, at a later stage.

## III. Taylor's Equal Pay Act Claim Cannot Proceed, as Taylor Alleges Only Race-Based Pay Discrimination, Not Sex-Based Pay Discrimination

Defendant argues Taylor failed to state a plausible claim for relief under the Equal Pay Act. That argument invokes Federal Rule of Civil Procedure 12(b)(6), as do the remainder of Defendant's arguments. Rule 12(b)(6) permits dismissal of a claim for failure to state a claim upon which the court can grant relief. To assess a motion to dismiss under that rule, courts must first take note of the elements a plaintiff must plead to state the applicable claims at issue. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

After establishing the elements of the claims at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity. *Id.* at 679. Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action. *Id.* at 678 (citations omitted).

22

In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements. *Iqbal*, 556 U.S. at 678. Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense." *Id.* at 678, 679 (citations omitted). The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability." *Id.* at 678, 679 (citations omitted).

Taylor's Complaint alleges Defendant violated the Equal Pay Act by paying him less than other supervisors within his organization. Taylor cites 29 U.S.C. § 206(d)(1), which states:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures

earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (emphasis in original); (*see* Doc. 1-2, ¶¶ 35-36).

Taylor states the statute "prohibits wage discrimination on the basis of race" (Doc. 1-2, ¶ 36), but the statutory language addresses only sex-based pay discrimination, and courts have not extended the Act's provisions to other protected categories. *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992) ("The Equal Pay Act was directed only at wage discrimination between the sexes and forbids the specific practice of paying unequal wages for equal work to employees of the opposite sex.").

Taylor's Complaint asserts no facts supporting an allegation of unequal pay based on sex. Therefore, he does not assert a plausible Equal Pay Act Claim, and the court will dismiss the claim. *See Romine v. Johnson*, No. 5:11-CV-2373-JHH-RRA, 2013 WL 12349462, at *1 (N.D. Ala. Mar. 6, 2013) (citing *Alexander v. Chattahoochee Valley Cmty. Coll.*, 325 F.Supp.2d 1274, 1293 (M.D. Ala. 2004)) ("Any and all claims alleging violations of the Equal Pay Act are due to be dismissed because '[t]he Equal Pay Act applies to pay discrimination on only the basis of sex' and not on the basis of race, as

alleged in the Second Amended Complaint.") (alteration in original).[10]

## IV.   Taylor's Complaint States a Plausible Title VII Claim for Race-Based Disparate Treatment

Count III of Taylor's Complaint alleges a claim for race-based disparate treatment in violation of Title VI.  (Doc. 1-2, ¶¶ 55-63).

Title VII of the Civil Rights Act prohibits employers from discriminating in the workplace on the basis of an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  The statute and accompanying case law organize discrimination into two categories.  In disparate treatment, an employer discriminates against a worker "with respect to his compensation, terms, conditions, or privileges of employment, because of" the individual's membership in a protected category. *Id.* § 2000e-2(a)(1).  Disparate treatment can take the form either of a "tangible employment action," such as a firing or demotion, or of a "hostile work environment" that changes "the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned." *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004).

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010).

To state a race-discrimination claim under Title VII, a complaint need only "provide enough factual matter (taken as true) to suggest intentional race discrimination." *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 974 (11th Cir. 2008) (quotation marks omitted) (citing [*Bell Atlantic Corp. v.* ]*Twombly,* 550 U.S. [544,] 555 [(2007)]).  The complaint "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case."

---

[10] Taylor's Complaint mentions Title VII under the heading "Count I – Equal Pay Act," as follows: "Plaintiff brings this Count pursuant to Title VII of the Civil Rights Act of 1964, Adverse Employment Action regarding Retaliation."  (Doc. 1-2, ¶ 38).  The court observes Title VII and the Equal Pay Act constitute separate statutes, and the substance of Taylor's allegations in Count I address unequal pay, not retaliation.  In addition, Taylor asserts other causes of action invoking Title VII to address discrimination and retaliation, further buttressing the conclusion that Count One addresses Equal Pay Act violations.  The court will address Taylor's Title VII claims in subsequent sections of this opinion.

> *Id.* (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511, 122 S. Ct. 992,
> 997, 152 L. Ed. 2d 1 (2002)[, *overruled on other grounds by Twombly*, 550 U.S.
> 544)]. This is because *McDonnell Douglas's* burden-shifting framework is
> an evidentiary standard, not a pleading requirement. *Swierkiewicz,* 534 U.S.
> at 510, 122 S. Ct. at 997.

*Surtain v. Hamlin Terrace Found.,* 789 F.3d 1239, 1246 (11th Cir. 2015).[11]

Defendant argues Taylor did not state a plausible claim for race-based disparate treatment because Taylor failed to allege sufficient facts to infer discriminatory animus, or to infer he suffered less favorable treatment than a similarly situated employee of another race. The court disagrees.

Under the heading of his disparate treatment cause of action (Count III), Taylor alleges Defendant treated him less favorably than other employees because of his race. (Doc. 1-2, ¶¶ 55-58). Specifically, Defendant relocated Taylor to a cubicle and retained him there for a year, conferred praise upon a white employee who experienced professional success only because he built upon a foundation Taylor laid, provided a

---

[11] Though the complaint need not explicitly satisfy the *prima facie* case standard, bearing in mind the required elements may elucidate the type of required allegations.

> When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817).

*Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220-21 (11th Cir. 2019).

white employee with human resources to which Taylor did not have access when he occupied the same position, failed to seriously consider Taylor's complaints about the lack of sufficient human resources, and treated white supervisors more favorably than black supervisors.  (*Id.* ¶¶ 59-63).

Elsewhere in Taylor's Complaint,[12] he alleges:

---

[12] Although Federal Rule of Civil Procedure 8 requires pleading of a plausible claim, it does not require a highly technical denomination of causes of actions:

> Rule 8 provides that to state a claim for relief, a pleading must contain the following: (1) "a short and plain statement of the grounds for the court's jurisdiction[;]" (2) "a short and plain statement of the claim showing the pleader is entitled to relief;" and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).  The short and plain statement of the claim "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alteration omitted).  Rule 8 also makes clear that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).  *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14 (2002) (explaining that "[t]he liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of the claim").

> Moreover, the "Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *abrogated in part by Twombly*, 550 U.S. at 563; *Harris v. Garner*, 216 F.3d 970, 996 (11th Cir. 2000) (same). *See also* 6-107 Collier Bankruptcy Practice Guide P. 107.03 ("[Rule] 8(e) provides that 'pleadings must be construed so as to do justice.'  This rule is at the very heart of the rules regarding pleadings.  'Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end.'") (quoting *Maty v. Grasselli Chem. Co.*, 303 U.S. 197, 200 (1938)); *De Loach v. Crowley's Inc.*, 128 F.2d 378, 380 (5th Cir. 1942). ("Just what [Rule 8(e)] means is not clear, but it excludes requiring technical exactness, or the making of refined inferences against the pleader, and requires an effort fairly to understand what he attempts to set forth.").

*Beem v. Ferguson*, 713 F. App'x 974, 979 (11th Cir. 2018) (alterations in original) (footnotes omitted). "Therefore, pleadings should not be dismissed for technical defects.  The pleading should be construed as a whole, to determine whether adequate notice of the claim or defense is presented."  2

- He "was moved from his hard wall office on September 3, 2019, to an open cubic[le] while under a frivolous investigation whereas fourteen other white or Caucasian supervisors were not moved before or during an investigation with known facts." (*Id.* ¶ 9);

- "Defendant refused to focus on the facts and discriminated against [Taylor] based on his race." (*Id.* ¶ 10);

- "Plaintiff requested numerous occasions for additional and specific resources and was denied the essential requirement to be successful as opposed to white supervisors being [provided] resources without further discussions." (*Id.*);

- "Despite repeated and persistent pleads [*sic*] by the plaintiff to the defendant, for additional resources, the defendant only provided resources to [Caucasian] supervisors." (*Id.* ¶ 15);

- "Defendant refused to take appropriate action to correct the racial disparity even with the knowledge of knowing [*sic*] the Plaintiff[']s] request was valid." (Doc. 1-2, ¶ 16);

- "The Defendant did not move at least twelve white or Caucasian supervisors that were under investigation and ultimately[ set] a precedence [*sic*] by following the

---

MOORE'S FEDERAL PRACTICE - CIVIL § 8.10 (2020).  These principles warrant even more emphasis when construing the claims of a *pro se* plaintiff.

same rules by not moving two white female supervisors that were under investigation under the current leadership." (*Id.* ¶ 18);

- "Plaintiff underwent racial discrimination . . . ." (*Id.* ¶ 21);

- "Because[] the Plaintiff is black, he was used as a scapegoat as a person who was blamed for the wrongdoings, mistakes, or faults of others . . . ." (*Id.* ¶ 26);

- "This disparate treatment case is as a result of the Plaintiff being in a protected class based on age, gender, color and race which was the motivating factor in the employment decision of being subjected to harassment, unequal, disproportionate and disparate treatment was uncalled for [*sic*]." (*Id.*)

- "The discriminator (Defendant) knew of the protected class, acts of harm resulting in disparate treatment occurred and others who were similarly situated were treated more favorably and not subjected to the same or similar adverse treatment in twelve cases involving white or Caucasian employees in a supervisory position." [*sic*]  (*Id.* ¶ 27);

- "This is systemic discrimination showing a pattern, practice, policy and class of being discriminated against." (Doc. 1-2, ¶ 28);

- "Since[] the Plaintiff was moved from his office before the investigation started and the decision was made not to put the Plaintiff back in his position of record serves as a pretext to discrimination [*sic*]."  (*Id.* ¶ 29).

29

- "Whereas twelve other white or Caucasian supervisors were never moved; a white female employee was caught stealing several times, during duty hours and was never moved while under investigation and was later offered a supervisory position." (*Id.* ¶ 30).

- "Defendant would praise white employees that were not performing because in his eyes, only white employees can accomplish the required mission." (*Id.* ¶ 31);

- "Defendant made a statement that a particular white male will be missed and the organization will be at a loss and not have the background to do what the white male employee was doing.  This particular white male employee had over 70 overdue audits with many of them being overdue by 10 years.  Defendant wanted to bring this employee back as a retired-annuitant, to get paid for something that he was not able to do when that employee worked fulltime.  Despite the new[] black female that was hired, the Defendant[] does not feel comfortable with her skill sets." (*Id.*).

These allegations provide ample factual support for an inference of intentional race discrimination.  Discovery may portray that the disparate treatment claim (Count III) overlaps with Taylor's claim for "Title VII Racial Discrimination" (Count IV), and the two claims may or may not ultimately provide separate grounds for relief.  However, at this stage, both counts state sufficiently plausible claims to survive Defendant's motion to dismiss.

**V.      Taylor's Complaint States a Plausible Title VII Claim for Retaliation**

Title VII's anti-retaliation provision provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

As with the disparate treatment claim, Taylor does not need to plead all elements of a *McDonnell-Douglas prima facie* case to survive the motion to dismiss.  *See Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 758 (11th Cir. 2021) ("[T]he district court erred in evaluating Powers's race discrimination claim under the *McDonnell Douglas* framework at the pleading stage."); *Baker v. Cont'l Aerospace Techs., Inc.*, No. 1:21-CV-00004-C, 2021 WL 6050437, at *2 (S.D. Ala. June 9, 2021) (citing *Twombly*, 550 U.S. at 570) (At the pleading stage, the plaintiff "is only required to allege 'enough facts to state a claim' of retaliation 'that is plausible on its face.'").  Even so, a review of the required elements will shed light on Taylor's pleading burden in this case.

A plaintiff asserting a Title VII retaliation claim must demonstrate:  (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) some causal relation exists between the two events. *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (citing *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d

1121, 1134 (11th Cir. 2020) (*en banc*)).

To satisfy the first element of this *prima facie* case, Title VII "recognizes two forms of statutorily protected conduct." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999). "An employee is protected from discrimination if (1) 'he has opposed any practice made an unlawful employment practice by [§ 2000e]' (the opposition clause) or (2) 'he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [§ 2000e]' (the participation clause)." *Id.* (quoting 42 U.S.C. § 2000e-3(a)). An employee activates the opposition clause's protection if he can demonstrate "a good faith, reasonable belief that the employer was engaged in unlawful employment practices . . ." *Bell v. City of Auburn*, 722 F. App'x 898, 900 (11th Cir. 2018). The burden does not require the employee "to show that the employer actually engaged in an unlawful employment practice." *Berman v. Orkin Exterminating Co.*, 160 F.3d 697, 702 (11th Cir. 1998); *accord Tipton v. Canadian Imperial Bank of Com.*, 872 F.2d 1491, 1494 (11th Cir. 1989) ("The employee need not prove the underlying claim of discrimination which led to her [complaint]").

An employer's action manifests as materially adverse if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Thus, "[t]he challenged action must be materially adverse from the standpoint of a reasonable employee." *Davis*, 516 F.3d at 978 n.52, *abrogated on other grounds by Ashcroft*, 556 U.S. 662. Consistent with

Supreme Court precedent, the Eleventh Circuit has prescribed a "liberal view of what constitutes" a materially adverse action for retaliation claims, pursuant to which an employee must simply demonstrate the employer's conduct "might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (citing *Burlington*, 548 U.S at 68).

To establish causation, an employee must demonstrate the decisionmaker retained knowledge of the protected activity, and the adverse employment action casually relates to such activity. *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017). Close temporal proximity between protected conduct and an adverse employment action generally suffices to establish a causal connection. *Id.* (citation omitted).

Defendant argues Taylor's complaint fails to adequately allege facts connecting any materially adverse employment action with statutorily protected activity. (Doc. 13, at 13). In considering Defendant's argument, the court must liberally construe Taylor's *pro se* pleadings, "holding them 'to a less stringent standard than pleadings drafted by attorneys.'" *Jacob v. Mentor Worldwide, LLC,* 40 F.4th 1329, 1334 (11th Cir. 2022) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).

Defendant's argument ignores Taylor's allegations that "[r]etaliation occurred against the Plaintiff, when he asserted his rights under the law, by filing a Title VII discrimination charge, opposed the Defendant's practice and Plaintiff participated in a

33

Title VII investigation and proceeding" (Doc. 1-2, ¶ 51), and "[r]etaliation [u]nder Title VII establishes the Plaintiff being engaged in activity protected by Title VII, Employer/Defendant took adverse action against Plaintiff, and there was a causal connection between his participation in the protected activity and the adverse employment action." (*Id.* ¶ 53).

More specifically, Taylor alleges Defendant moved him to a cubicle on September 3, 2019, during an investigation, whereas it did not move other white employees during investigations. (*Id.* ¶ 9). Then he alleges that, "[i]n spite [of] having an email from the labor relations office describing the Plaintiff not returning to his position of record," Defendant continued to discriminate against Taylor by denying him essential job resources. (*Id.* ¶ 10). Those actions plausibly support a claim of retaliation, as Defendant may have retaliated against Taylor for complaining about racially disparate treatment during an investigation, and crippling an employee's ability to adequately perform his job duties could deter a reasonable employee from complaining of discriminatory conduct.

Taylor also alleges he expressed concerns to management employees about race-based disparities in the distribution of resources before Defendant moved him to a cubicle office and removed his supervisory responsibilities. (*Id.* ¶¶ 15-17). Finally, Taylor alleges that after he sought a "remedy through the EEO process," Defendant "retaliated against [him] by paying him less than any other supervisor within the

34

organization." (*Id.* ¶ 32).  These allegations establish even more direct links between Taylor's protected activity (complaints of race-based disparities and an EEO complaint) and Defendant's materially adverse actions.

For the foregoing reasons, and bearing in mind the liberal standard for construing *pro se* pleadings, the court concludes Taylor stated a plausible retaliation claim.

### CONCLUSION AND ORDER

In accordance with the foregoing, the court **PARTIALLY GRANTS** Defendant's motion to dismiss.  The court **DISMISSES** Plaintiff's Equal Pay Act claim (Count I).  All other claims remain pending and shall proceed to discovery pursuant to the terms of the Uniform Initial Order entered contemporaneously herewith.

**DONE** and **ORDERED** this 25th day of April, 2023.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE